APPLEBY *vs.* THE FIREMEN'S FUND INSURANCE COMPANY.

THE SAME *vs.* THE ASTOR FIRE INSURANCE COMPANY.

If, after an insurance is effected upon goods in a specified building, the insured rent a part of the building to other persons, who apply the same to purposes prohibited by the policy as being hazardous or extra hazardous, this will avoid the policy, although the goods insured are not in that part of the building so let.

Where an insurance is made upon goods in a specified building, generally, so as to cover goods in any part of it, the insured can not escape the consequences of allowing a hazardous business to be carried on in any part of the building by tenants, by showing that he only occupied a part of the building, and not the whole, as described in the policy.

THE same question is presented in these cases, but under different aspects. The actions were upon policies of insurance, by which the defendants insured the plaintiffs against loss or damage by fire, on merchandise contained "in the brick store No. 360 Pearl street," in the city of New York. The evidence showed that after the insurance was made, the insured rented a part of the premises, viz : the upper stories of the building, to other persons who carried on therein the business of putting together the frames of chairs which had been made elsewhere. This was claimed to be a manufactory increasing the risk and bringing the case within the exception of the policy, that a manufacturing establishment or workshop should be considered as hazardous and extra hazardous, and the provision that if at any time during the existence of the policy, the risk should be increased by any means within the control of the assured, or by the occupation of the premises for more hazardous purposes than are permitted by the policy, it should be void.

In the first case, the court held that as the plaintiffs did not use or occupy any part of the building for a purpose prohibited by the policy, and had no control over the same, they were not responsible for such use, and that they were not responsible for what was done in any part of the building

not used or occupied by them, and over which they had no control, and the court directed a verdict for the plaintiffs.

In the second case, the court held that the assured were bound to know what was going on in the building or premises named in the policy; that the business carried on in the building was that of a manufactory; that the word "premises" used in the policy included the portion of the premises where Sawrie & Osgood carried on their chair business, and that the conditions of the policy applied to them. The court in this case dismissed the complaint.

*By the Court,* INGRAHAM, J. By the word "premises," as used in the policy, must be understood the place in which the assured had represented his property to be, and which the assurer had described in the policy to be the place where the property insured was stored. The policy, which was made in July, 1862, insured the plaintiffs against loss or damage by fire on merchandise contained in the brick store, No. 360 Pearl street. At that time the assured were the proprietors of the basement and first story of the building, and not of the whole store. The insurance they obtained, however, covered goods in any part of the store, and if they had stored goods in the fifth story, they would have been protected as much as if they had been stored in the cellar. There is, then, no difficulty in understanding what is meant by premises, viz. the place described in the policy as containing the merchandise insured. If the policy had been on merchandise contained in the first story and basement of No. 360 Pearl street, then the word premises would be properly applicable to those stories, and would not cover the other parts of the building.

It follows from these views, that the act of the assured in permitting Sawrie & Osgood to occupy the upper stories of this store, was a permission to introduce their business upon these premises by means within the control of the assured. It was the duty of the assured during the running of the

policy to guard against such increased risk in any part of the premises described as occupied by them, and if they rented to others, they should have protected themselves by proper restrictions upon their tenant against any violation of the terms of the policy.

On the 1st of May succeeding the making of this policy, the plaintiffs ceased to be the landlords of this building and became tenants of Sawrie & Osgood of the basement only. The residue of the building was not under their control. It only had been so between September 9, 1862, and May 1, 1863, during which time they had a lease of the whole building.

At the time of the fire, then, the premises occupied by them were in reality less than when the insurance was first effected. The difficulty, however, is in confining the insurance company to this portion of the building, while the whole building was covered by the policy, and goods in any part of it would have been protected.

The evidence does not show any business carried on there prior to the 1st of May, that would warrant the court to hold that it was a manufactory. The evidence is that the premises were used for storage, and the witness says they might have put some chairs together before the 1st of May, but there is no clear proof that would establish such use at any time while the plaintiffs had the contol. Taking it for granted, as appears to have been done in both cases by the court on the trial, that the business carried on by Sawrie & Osgood was that of a manufactory, I do not see how the plaintiffs can escape the consequences of having any part of the building applied to purposes which are prohibited by the policy. In holding this rule, it does not by any means decide that the plaintiffs were bound to know what business was carried on in parts of the building owned by others, or in adjoining buildings. They could provide against that by limiting the place of insurance. If they had only insured goods in the basement of this building, then the clause which

The People *v.* Brennan.

prohibited an increase of risk by means within the control of the assured would not apply; but where the insurance is made upon the whole building so as to cover goods in any part of it, the assured can not escape the consequences of the conditions of the policy as to increased risks by proof to show that he only occupied a part of the building, and not the whole as described in the policy.

I am not satisfied, however, that the business carried on by Sawrie & Osgood on those premises was a manufactory within the meaning of the terms used in the policy. In the first case, the judge was asked so to instruct the jury, and he refused. In the second case, the judge so held, and refused to submit the question to the jury. Whether it was or was not a manufactory was properly a question of fact, and in the latter case should have gone to the jury, as a question of fact. The evidence certainly did not prove it beyond dispute. On the contrary, some of the witnesses testified the chairs were manufactured before they came there, and one that it was not a factory.

I think in both cases there were errors in the ruling of the court, and that new trials should be ordered, costs to abide the event.

[NEW YORK GENERAL TERM, January 2, 1866. *Geo. G. Barnard, Clerke* and *Ingraham,* Justices.]